## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## EASTERN DIVISION

KATHY FOUSE,

        Plaintiff,

    v.                               Civil Action 2:04-CV-556

JOHN E. POTTER,                     JUDGE SMITH
POSTMASTER GENERAL,          MAGISTRATE JUDGE KING

        Defendant.

### <u>DEFENDANT'S MOTION FOR SUMMARY JUDGMENT</u>

NOW COMES Defendant, John E. Potter, Postmaster General, by and through counsel, and moves this Honorable Court, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for Summary Judgment. The basis for Defendant's motion is contained in the attached Memorandum in Support.

                          Respectfully submitted,

                          GREGORY G. LOCKHART
                          United States Attorney


                          s/Christopher R. Yates
                          CHRISTOPHER R. YATES (0064776)
                          Assistant United States Attorney
                          Attorney for Defendant
                          303 Marconi Boulevard
                          Suite 200
                          Columbus, Ohio 43215
                          (614) 469-5715
                          Fax: (614) 469-5653
                          Christopher.Yates@usdoj.gov

# TABLE OF CONTENTS

SUMMARY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii

I.      STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

II.     STATEMENT OF THE FACTS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

III.    STANDARD OF REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

IV.     LAW AND ARGUMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

        A.      Plaintiff Has Failed to Establish a Prima Facie Case of Discrimination . . . . . . . . 9

                1.      Plaintiff Has Not Identified Any "Similarly Situated"
                        Employees Receiving More Favorable Treatment . . . . . . . . . . . . . . . . . 10

                        a.      The First <u>Mitchell</u> Requirement: Same Supervisor . . . . . . . . . . . 11

                        b.      The Second <u>Mitchell</u> Requirement: Same Standards . . . . . . . . 11

                        c.      The Third <u>Mitchell</u> Requirement: Same Conduct . . . . . . . . . . . 13

                        d.      Plaintiff Cannot Identify Any Employees That Satisfy
                                the Three <u>Mitchell</u> Requirements . . . . . . . . . . . . . . . . . . . . . . . . 15

                2.      Plaintiff Has Failed to Establish Facts Sufficient to Support an
                        Inference of Discrimination . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

        B.      Defendant Has Articulate a Legitimate, Non-Discriminatory Reason
                for Terminating Plaintiff . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

        C.      Plaintiff Cannot Show That Non-Discriminatory Reason Is Pretextual . . . . . . . 24

        D.      Plaintiff Faces the Additional Burden of Proving That Members of
                Her Own Protected Class Discriminated Against Her . . . . . . . . . . . . . . . . . . . . . 25

V.      CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 25

VI.     CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 27

LIST OF EXHIBITS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 28

## <u>SUMMARY</u>

Ms. Fouse, a transitional employee with the USPS, was involved in a motor vehicle accident. Contrary to USPS policy, she did not report the accident or remain at the scene so her supervisor could come conduct an investigation. Instead, she returned to the station, where her supervisor discovered that Ms. Fouse had been involved in an accident, causing $2000 damage to the USPS vehicle she was driving. Ms. Fouse was ultimately terminated for her failure to report her accident. She claims, however, that her termination was the result of discrimination.

Under <u>McDonnell-Douglas</u>, Ms. Fouse must establish that she is a member of a protected class, that she suffered an adverse employment action, that she was qualified for the position, and that similarly situated employees outside her protected class were treated differently. These four elements constitute a prima facie case of discrimination. Once Ms. Fouse establishes all four elements, the burden shifts to the USPS to articulate a legitimate, non-discriminatory reason for her termination. If the USPS carries this burden, then the burden shifts back to Ms. Fouse to show that the proffered reasons are pretextual.

Ms. Fouse is unable to establish a prima facie case of discrimination against the USPS because she cannot establish the fourth <u>McDonnell-Douglas</u> element. None of the employees she identifies are similarly situated to her because none of the employees meet the three <u>Mitchell</u> requirements: same supervisor, same standards, same conduct. Her ability to create an inference of discrimination is further hampered by the fact that the majority of the decision-makers who chose to terminate her are, in fact, members of Ms. Fouse's own protected class.

Even if Ms. Fouse were successful in establishing a *prima facie* case, the USPS has articulated several legitimate, non-discriminatory reasons for her termination, which Ms. Fouse

cannot prove are pretextual. Ms. Fouse violated several USPS policies, and her misconduct led her supervisors to believe that she was trying to "cover up" her accident. In addition, Ms. Fouse's accident caused substantial damages to USPS property. Ms. Fouse has no evidence that these proffered reasons are pretextual.

Furthermore, the circumstantial evidence offered by Ms. Fouse does not support an inference of discrimination. Ms. Fouse's already tenuous case is further weakened by the fact that the majority of her disciplinarians are members of her own protected class. Although this is not dispositive, it does weaken any inference of discrimination.

For these reasons, Defendant's Motion for Summary Judgment should be granted.

<u>**MEMORANDUM IN SUPPORT**</u>

**I.      STATEMENT OF THE CASE**

On June 24, 2000, Kathy Fouse, an African American female employed as a transitional

employee (TE) city carrier with the United States Postal Service (USPS), was involved in a

motor vehicle accident. Fouse Dep. Ex. D, Notice of Removal [hereinafter Notice] at 1(Exhibit

A). She received a Notice of Removal on July 14, 2000, notifying her that her employment

would be terminated effective August 11, 2000. Fouse Dep. at 37/25-38/7 (Exhibit B).

**The Grievance Procedure**. On August 1, 2000, a grievance was filed under the National

Agreement between the USPS and the National Association of Letter Carriers (NALC). EEOC

Proceeding Tr. [hereinafter EEOC Tr.], Compl. Ex. 1, Fouse Arbitration Award [hereinafter

Arb.] at 2 (Exhibit C). The grievance was processed through the prescribed procedures, and the

USPS prevailed. <u>Id.</u> On March 23, 2001, the NALC appealed the decision and requested

arbitration. <u>Id.</u> An arbitration hearing was conducted on May 3, 2001, at which time both parties

"had a full and fair opportunity to present evidence and testimony, to examine and cross-examine

witnesses, and toe argue their respective positions." <u>Id.</u> On June 2, 2001, the arbitrator found that

there was just cause for Ms. Fouse's termination, and ruled in favor of the USPS. <u>Id.</u> at 15.

**The EEOC Proceedings**. Ms. Fouse participated in EEO counseling from July 19, 2000

to October 12, 2000. <u>Fouse v. Potter</u> [hereinafter EEOC Decision], EEOC Case No. 220-A1-

5255, at 4 (Sept. 20, 2002) (Exhibit D).  On October 25, 2000, Ms. Fouse filed a formal

complaint with the EEOC, alleging discrimination on the basis of race and gender. Formal

Complaint, Investigative Record [hereinafter I.R.] at 116 (Exhibit E).  The complaint was

investigated in April of 2001, and Ms. Fouse requested a hearing on May 13, 2001. EEOC

Decision at 4 (Ex. D). An EEOC hearing was conducted on July 17, 2002, and in an opinion

dated September 20, 2002, the administrative judge found that Ms. Fouse "was not discriminated

against based on her race and/or sex." EEOC Decision at 8, Id. Ms. Fouse appealed the decision,

and the EEOC affirmed the administrative judge's decision on March 28, 2004. At that time, the

EEOC granted to Ms. Fouse the right to file a civil action. Ms. Fouse filed the Complaint with

this Court on June 28, 2004, and the First Amended Complaint on July 6, 2004.

## II.     STATEMENT OF THE FACTS

**The Accident**. In June of 2000, Kathy Fouse, an African American female, was

employed as a transitional employee city carrier[1] with the USPS at the West Worthington

Station. On June 24, 2000, she was involved in a motor vehicle accident in which the USPS

vehicle she was driving struck a telephone pole. EEOC Tr., Fouse Test. at 14/14-15/8 (Exhibit

F). As a result of the accident, she was unable to shut the door of her vehicle. Id., Blackwell

Test. at 106/4-6. Ms. Fouse then called West Worthington Station and asked to speak with Jeff

Easley. Id., Fouse Test. at 15/12-13. Mr. Easley, a white male, was the supervisor on duty when

Ms. Fouse left to complete her route. Tracy Blackwell, an African American female and the

supervisor on duty at the time of the accident, answered the call and informed Ms. Fouse that

Mr. Easley was not available. Id., Blackwell Test., at 106/14-107/13. Ms. Fouse informed Ms.

Blackwell that she had "had a mishap" with her truck and was unable to shut the door. Id., Fouse

Test. at 15/15-17; Blackwell Test. at 107/6-8. At that time, Ms. Blackwell did not think that Ms.

---

[1]Although Ms. Fouse argues that she was a part-time flexible at the time of her accident, she is unable to substantiate this claim. See Fouse Dep. at 31/11-34/21, Ex. B; EEOC Tr., Fouse Test. at 51/9-52/12, Ex. F. But see id. at 110/20-22; Barker EEO Aff. at 1/5-7, Exhibit G; French EEO Aff. at ½-4, I.R. at 11, Ex. E; Easley EEO Aff. of 12/17/00 at 1/7-8, I.R. at 14, Ex. E.

Fouse had been involved in an accident, but that she just could not get the door to shut. Id. at 107/8-11. The two of them agreed that Ms. Fouse would come back to the station. Id., Fouse Test. at 15/20-22. Upon Ms. Fouse's return, Ms. Blackwell saw the damage to the vehicle and realized that Ms. Fouse had been in an accident. Id., Blackwell Test. at 107/22-108/11. Ms. Blackwell, then a new supervisor, then sent Ms. Fouse back out in another vehicle to complete her route–contrary to USPS policy. Id. at 103/ 24-104/15, 112/21-113/5.

**The Notice of Removal**. When Ms. Fouse returned to work the week after the accident, she was told she would not be carrying mail anymore. Id., Fouse Test. at 18/11-16. On July 14, 2000, Ms. Fouse received a Notice of Removal, effective August 11, 2000, for failure to report her accident. Id., Fouse Test. at 19/3-11; Notice at 1, Ex. A. As a result of her failure to report the accident, Ms. Fouse's supervisors were unable to conduct an investigation of the accident as required by USPS policy. EEOC Tr., Barker Test. at 79/14-24, Ex. F; Blackwell Test. at 118/12-119/3, Ex. F. The accident also resulted in over $2000 worth of damages to the USPS vehicle. Easley EEO Aff. of 12/17/00 at 1/11-12, I.R. at 14, Ex. E. Ms. Fouse's conduct led her supervisors to believe she was attempting to "cover up" her accident. Barker EEO Aff. at 1/9-11, Ex. G.

**USPS Accident Policies**. USPS policy requires all carriers to report accidents promptly. Id., Barker EEO Aff. at 1/16-2/1. The carriers are to remain at the scene of the accident so that the supervisors can conduct an investigation of the accident. Id. at 2/1-5. According to USPS policy, all preventable accidents, even if promptly reported, warrant discipline. Easley EEO Aff. of 12/17/00 at 2/13-14, I.R. at 15, Ex. E. Failure to report a preventable accident and failure to remain at the scene of the accident constitute additional violations of USPS procedures and

warrant additional discipline. Id. at 2/14; Barker EEO Aff. at 1/16-2/5, Ex. G (referring to Employee's Guide to Safety, EL-814, § X.C, Exhibit H). Ms. Fouse was aware of these policies at the time of the accident. Easley EEO Aff. of 12/17/00 at 2/6-11, I.R. at 15, Ex. E.

**USPS Employment Classifications.** Under USPS policies, transitional employees are subject to different disciplinary standards than career employees. Like career employees, transitional employees are protected by the NALC union. See 1998 NALC-USPS Nat'l Agreement [hereinafter Nat'l Agreement], Appx. B, § 1, Exhibit I.  Likewise, both transitional employees and career employees may be terminated for just cause.  Id., Nat'l Agreement, Appx. B, § 11.  However, career employees are protected by the requirement of "progressive discipline." EEOC Tr., Barker Test. at 68/21-24, Ex. F.  This means that for career employees, management must issue "lesser" discipline for a first offense and a pattern of increasingly severe discipline for succeeding offenses. Id., Barker Test. at 67/11-68/24. Management cannot terminate a full-time, regular career employee without progressive discipline. Id., Barker Test. at 67/11-15. The concept of progressive discipline *does not apply* to transitional employees. Barker EEO Aff. at 1/12-15, Ex. G (referring to Nat'l Agreement, Appx. B, § 11, Ex. I). Transitional employees do have access to the grievance procedure. Nat'l Agreement, Appx. B., § 9, Ex. I. However, when a transitional employee appeals a termination via the grievance-arbitration procedure, the only issue before the arbitrator is "whether the employee is guilty of the charge against [her]. Where the employee is found guilty, the arbitrator shall not have the authority to modify the discharge."  Id., Nat'l Agreement, Appx. B, § 11.

Casual employees differ from both career and transitional employees. Casual employees are not protected by the NALC union–they are nonbargaining unit employees.  Id., Nat'l

-4-

Agreement, Art. 1 § 2. Casual employees may be terminated *at any time for any reason*. Employee & Labor Relations Manual [hereinafter ELM] § 365.33, Exhibit J.  Transitional employees are subject to "removal." Casual employees are not; they are subject to "termination or separation." Id. at §§ 365.11, 365.33.

**USPS Disciplinary Policies.** USPS policy requires both an issuing authority and a concurring authority for any disciplinary action taken. EEOC Tr., Barker Test. at 63/22-64/19, Ex. F.  The issuing authority requests the appropriate disciplinary action. Id.  The concurring authority does not merely "rubber stamp" the requested discipline; the concurring authority must review "all of the facts and circumstances." Id., Barker Test. at 64/5-12. If the concurring authority agrees with the determination of the issuing authority, the discipline becomes official. Id.  Kathy French, an African American female, signed Ms. Fouse's Notice of Removal as the issuing authority; John Barker, an African American male, signed as the concurring authority. Notice at 1, Ex. A.

**Other Employees.** Throughout the administrative process, Ms. Fouse has identified several employees as "similarly situated" to herself. I.R. at 6, Ex. E (untitled chart of carriers involved in accidents) [hereinafter Chart].[2] These employees include Anthony Ratliff, Paul Scheer, Jesse Pence, Steve West, Tina Tabor, Cindy Casparro, Doti Venham-Cunningham, and Christine White. Id.

Anthony Ratliff, a white male transitional employee, was involved in a motor accident,

---

[2]See EEOC Tr., Fouse Test. at 32/21-33/21, 36/4-6, Ex. F; Barker Test. at 57/4-24, 76/ 19-24, Ex. F; French Test. at 88/21-24, Ex. F (referring to Chart).

which he promptly reported. Chart, col. 3, <u>Id.</u>[3] His supervisor was Daryl Rayford. <u>Id.</u> Paul

Scheer, a white male casual employee, was involved in a motor vehicle accident, which he

promptly reported. <u>Id.</u> at col.4.[4] His supervisor was Jeff Easley. <u>Id.</u> Jesse Pence, a white male

full-time regular employee, was involved in an industrial accident. <u>Id.</u> at col. 5.[5] He was not

involved in a motor vehicle accident. <u>Id.</u> Mr. Pence's supervisor was Jeff Easley. <u>Id.</u> Steve West,

a white male full-time regular employee, was involved in a motor vehicle accident, which he

promptly reported. <u>Id.</u> at col. 6.[6] His supervisor was Daryl Rayford. <u>Id.</u> Mr. West received a five

day suspension. <u>Id.</u> The concurring authority was Kathy French. <u>Id.</u>

    Tina Tabor, a white female part-time flexible career employee, was involved in a motor

vehicle accident–she ran over a customer's trash can.[7] The customer told her not to worry about

it, so Ms. Tabor did not report the accident. Her supervisors were unaware of the accident until

the customer contacted them sometime later. At that time, Kathy French and Jeff Easley

instructed Ms. Tabor to purchase a new trash can for the customer. Arb. at 12, Ex. C.[8]

---

[3]See also French EEO Aff. at 1/8-16, I.R. at 11, Ex. E; EEOC Tr., Fouse Test. at 33/5-34/12, Ex. F; Barker Test. at 76/19/77/4, Ex. F; French Test. at 99/23-101/5, Ex. F.

[4]<u>See also</u> Easley EEO Aff. of 01/05/01, at 2/3-8, I.R. at 18, Ex. E; EEOC Tr., Fouse Test. at 36/4-7, 37/12-15, Ex. F; EEOC Tr., Ex. 11, I.R. at 54-59, Ex. E (accident history for Mr. Scheer).

[5]<u>See</u> French EEO Aff. at 1/17-18, I.R. at 11, Ex. E; EEOC Tr., Ex.13, I.R. at 60-62, Ex. E (accident report, history for Mr. Pence).

[6]<u>See also</u> French EEO Aff. at 1/18-24, I.R. at 11, Ex. E; EEOC Tr., French Test. at 89/8-17, Ex. F; EEOC Tr., Ex. 14, I.R. at 63-65, Ex. E (Notice of Suspension and accident report for Mr. West).

[7]There is some dispute concerning the specifics of Ms. Tabor's accident and the surrounding circumstances. She never reported the accident and there is some question whether her supervisors knew of the accident at all. <u>See</u> Chart, col. 7, Ex. E; <u>Id.</u>, EEOC Tr., Ex. 15, I.R. at 72 (accident history for Ms. Tabor), Ex. E; Arb. at 12, Ex. C (summarizing Ms. Tabor's testimony at the arbitration hearing). It is assumed for the sake of argument that Ms. Tabor had an accident and failed to report it. It is also assumed that her supervisors were Jeff Easley and Kathy French. <u>Id.</u>

[8]Ms. Tabor testified that she was instructed to purchase a new trash can. However, Ms. French and Mr. Easley testified that they do not recall this event. <u>See</u> EEOC Tr., French Test. at 91/16-95/ 16, Ex. F; <u>Id.</u>,

Cindy Casparro, a white female full-time regular employee, was involved in a motor vehicle accident. Chart, col.8, Ex. E[9] The accident did not result in any damage to the USPS vehicle. Her supervisor was Tracy Blackwell. Id. Ms. Casparro failed to report the accident promptly and received a fourteen-day suspension. Id. Ms. Casparro would have received a ten-day suspension, but because she failed to report the accident, she received more severe discipline. EEOC Tr., Barker Test. at 68/7-20, Ex. F.  The concurring authority was Kathy French. Chart, col.8, Ex. E.

Doti Venham-Cunningham, a white female full-time regular employee, was not involved in a motor vehicle accident, but received a letter of warning for parking obstructing a stop sign. Id. at col. 9.[10] Her supervisor was Daryl Rayford. Id. Christine White, a white female part-time flexible career employee, was involved in a motor vehicle accident which she promptly reported. Id. at col. 10, Ex. E.[11] The only damage to the USPS vehicle was a cracked mirror. EEOC Tr., Ex. 18, I.R. at 80. Ms. White's supervisor was Joe Mirocke. Chart, col. 10. Ms. White was terminated. Id. The concurring authority was Kathy French. Id.

## III.    STANDARD OF REVIEW

A case alleging discrimination is treated the same as any other case on summary judgment. See U.S. Postal Serv. Bd. of Governors v. Aikens, 440 U.S. 711, 716 (1982).

---

Arb. at 11-12 (summarizing Mr. Easley's testimony), Ex.C. See also EEOC Tr., Barker Test. at 70/16-71/12, Ex. F.

[9]EEOC Tr., Barker Test. at 66/ 21-24, 67/7-10, Ex. F; French Test. at 89/18-24, Ex. F; EEOC Tr., Ex. 16, I.R. at 73-76, Ex. E (Notice of Suspension and accident report for Ms. Casparro).

[10]See also EEOC Tr., Ex. 17, I.R. at 77-78, Ex. E (Letter of Warning to Ms. Venham-Cunningham).

[11]See also French EEO Aff. at 1/24-28, I.R. at 11-12, Ex. E; EEOC Tr., Ex. 18, I.R. at 79, Ex. E (Notice of Termination for Ms. White).

Summary judgment is appropriate when there is no genuine issue of material fact as to one of the essential elements of the plaintiff's cause of action. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242 (1986); Fed. R. Civ. P. 56(c), (e). A party seeking summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)). Once the moving party fulfills this responsibility, the non-moving party must come forward with some significant probative evidence which makes it necessary to resolve the factual dispute at trial. <u>Id.</u> The moving party is entitled to summary judgment if the nonmoving party fails to make a sufficient showing on an essential element of the nonmoving party's case. <u>Id.</u>; <u>Collyer v. Darling</u>, 98 F.3d 211, 220 (6th Cir. 1996). Thus, "the mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." <u>Anderson</u>, 477 U.S. at 252. Ms Fouse has failed to "make a showing sufficient to establish the existence of an element essential to [her] case, and on which [she] will bear the burden of proof at trial"; thus, summary judgment is appropriate. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322 (1986).

## IV.    LAW AND ARGUMENT

In order to survive a motion for summary judgment in Title VII actions, a plaintiff must establish a *prima facie* case of discrimination, <u>McDonnell-Douglas Corp. v. Green</u>, 411 U.S. 792, 802 (1973), either by presenting direct evidence of discrimination or by presenting indirect, inferential, and circumstantial evidence "which would support an inference of discrimination."

-8-

Kline v. Tenn. Valley Auth., 128 F.3d 337, 348 (6th Cir. 1997). When a plaintiff uses indirect evidence to create an inference of discrimination, the court evaluates the claim using the McDonnell-Douglas burden-shifting framework, discussed below. Establishment of a *prima facie* case of discrimination under this framework creates a presumption that the employer unlawfully discriminated against the plaintiff, and the burden shifts to the employer to "articulate a legitimate, nondiscriminatory reason" for the plaintiff's termination. Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, 254 (1981); Talley v. Bravo Pitino Rest., Ltd., 61 F.3d 1241, 1246 (1995). If the employer carries this burden and offers a legitimate reason for terminating the plaintiff, the burden shifts back to the plaintiff to prove that the legitimate reasons articulated by the employer "were not its true reasons, but were a pretext for discrimination," Burdine, 450 U.S. at 253, and that "discrimination was a determinative factor in [her] termination." Talley, 61 F.3d at 1246. "The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S. at 253.

Ms. Fouse is unable to establish a prima facie case of discrimination against the USPS. Even if she were successful in establishing a *prima facie* case, the USPS has articulated several legitimate, non-discriminatory reasons for her termination, which Ms. Fouse cannot prove are pretextual. Furthermore, the circumstantial evidence offered by Ms. Fouse does not support an inference of discrimination.

### A.    Plaintiff Has Failed to Establish a *Prima Facie* Case of Discrimination.

In order to establish a *prima facie* case of discrimination using indirect or circumstantial evidence, Ms. Fouse must prove four elements: (1) that she is a member of a protected class; (2)

that she suffered an adverse employment action; (3) that she was qualified for the position; and (4) that similarly-situated employees outside the protected class were treated differently. DiCarlo v. Potter, 358 F.3d 408, 415 (6th Cir. 2004); see also McDonnell-Douglas, 411 U.S. at 802. Ms. Fouse must establish all four elements in order to create an inference of discrimination and shift the burden to the USPS. If she fails to establish any element, her claim fails as a matter of law and the USPS is entitled to summary judgment. See Clayton v. Meijer, Inc., 281 F.3d 605, 612 (6th Cir. 2002).

Ms. Fouse, an African American female, is undoubtedly a member of a protected class, and her termination constitutes an adverse employment action. Fouse Dep. at 4, Ex. B; Notice at 1, Ex. A. There is some evidence that she was qualified for the job of mail carrier. Even assuming, for the sake of argument, that Ms. Fouse has established the first three McDonnell-Douglas elements, she is unable to establish the fourth and final element: Ms. Fouse has not identified any similarly situated employees outside the protected class who received more favorable treatment.

### 1.    Plaintiff Has Not Identified Any "Similarly Situated" Employees Receiving More Favorable Treatment

In establishing the fourth McDonnell-Douglas element, a plaintiff must compare herself to employees who are similarly situated–or "nearly identical"–in "all relevant aspects" of their employment. Pierce v. Commonwealth Life Ins. Co., 40 F.3d 796, 802 (6th Cir. 1994). In order to be deemed similarly situated, the other employees "must have dealt with the *same supervisor*, . . . been subject to the *same standards*, and . . . engaged in the *same conduct without such differentiating or mitigating circumstances* that would distinguish their conduct or the

-10-

employer's treatment of them for it." Mitchell v. Toledo Hosp., 964 F.2d 577, 583 (6th Cir. 1992) (emphasis added). Ms. Fouse is unable to identify any employee who meets the three Mitchell criteria: none of the alleged "similarly situated" employees (1) dealt with the same supervisors, (2) were subject to the same standards, and (3) engaged in the same conduct as Ms. Fouse.

### a.     The First Mitchell Requirement: Same Supervisor

The Sixth Circuit continues to apply the same-supervisor requirement set forth in Mitchell. See McMillan v. Castro, 405 F.3d 405 (6th Cir. 2005); Humenny v. Genex Corp., 390 F.3d 901 (6th Cir. 2004). Other circuits apply this requirement as well. See Stanback v. Best Diversified Products, Inc., 180 F.3d 968, 972 (8th Cir. 1999) ("[When] different decision-makers are involved, two decisions are rarely similarly situated in all relevant respects."); Radue v. Kimberly-Clark Corp., 219 F.3d 612, 618 (7th Cir. 2000) ("[E]mployment decisions, . . . made by different supervisors, are seldom sufficiently comparable to establish a *prima facie* case of discrimination for the simple reason that different supervisors may exercise their discretion differently.") The Seventh Circuit has explained that the differences between supervisors' use of discretion "sufficiently account for any disparity in treatment, thereby preventing an inference of discrimination." Radue, 219 F.3d at 618. Different treatment of employees by different supervisors does not support an inference of discrimination and thus can not contribute to a *prima facie* case.

### b.     The Second Mitchell Requirement: Same Standards

In addition to requiring that similarly-situated employees have the same supervisor, the court also requires that similarly-situated employees be subject to the same standards. Mitchell, 964 F.2d at 583. Federal courts have repeatedly applied this requirement in the context of

differing employee classifications. For example, probationary employees are similarly situated to other probationary employees and are not similarly situated to permanent employees. Cooper v. City of North Olmsted, 795 F.2d 1265, 1271 (6th Cir. 1986); Macklin v. Turner, No. 1:03CV2347, 2005 WL 2211170, *7 (N.D. Ohio Sept. 9, 2005), Exhibit K; Allen v. Ohio Dep't of Rehabilitation & Correction, 128 F. Supp. 2d 483, 494 (S.D. Ohio 2001).[12] Similarly, short-term employees are similarly situated only to other short-term employees, unclassified employees to other unclassified employees, temporary or casual employees to other temporary or casual employees, untenured employees to other untenured employees, and transitional employees to other transitional employees. See Hughes v. Chesapeake & Potomac Telephone Co., 583 F. Supp. 66, 70 (D. D.C. 1983) (short-term employees); Schatzman v. County of Clermont, 234 F.3d 1269, 2000 WL 1562819, *7 (6th Cir. 2000) (unclassified employees) Exhibit L; Talley v. United States Postal Serv., 720 F.2d 505, 507 (8th Cir. 1983) (temporary or casual employees); Russell v. Drabik, 24 Fed. Appx. 408, 413 (6th Cir. 2001) (untenured employees) Exhibit M; Schmidt v. Runyon, 20 F. Supp. 2d 1246, 1249 (C.D. Ill. 1998) (transitional employees). The basis for this distinction is the difference in disciplinary standards and procedures to which employees of different classifications are subject. See Holbrook v. Reno, 196 F.3d 255, 262 (D.C. Cir. 1999); Herr v. Airborne Freight Co., 130 F.3d 359, 362 (8th Cir. 1997). The fact that

---

[12]This rule has gained widespread acceptance. See Feingold v. New York, 366 F.3d 138, 153 (2d Cir. 2004); Mercer v. City of Cedar Rapids, 308 F.3d 840, 845 (8th Cir. 2002); Bogren v. Minnesota, 236 F.3d 399, 404 (8th Cir. 2000); Holbrook v. Reno, 196 F.3d 255, 262 (D.C. Cir. 1999); Burgess v. State of Washington Dep't of Corrections, 199 F.3d 1331, 1999 WL 974182 (9th Cir. 1999) Exhibit N; Ghane v. West, 148 F.3d 979 (8th Cir. 1998); Herr v. Airborne Freight Corp., 130 F.3d 359, 362 (8th Cir. 1997); McKenna v. Weinberger, 729 F.2d 783, 789 (D.C. Cir. 1984); Williams v. Cuomo, 961 F. Supp. 1241, 1245 (N.D. Ill. 1997), aff'd, 151 F.3d 1035 (7th Cir. 1998); Walker v. Runyon, 979 F. Supp. 1363, 1368 (D. Kan. 1997).

employees who are subject to different disciplinary standards are treated differently does not support an inference of discrimination–any difference in treatment is likely to be the result of the different disciplinary standards, rather than the result of discrimination. Employees who belong to a classification with disciplinary standards that differ from the disciplinary standards applicable to plaintiff's classification are not similarly situated to the plaintiff.

### c.  The Third <u>Mitchell</u> Requirement: Same Conduct

The third and final <u>Mitchell</u> criteria is the requirement that similarly-situated employees have engaged in "the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it." <u>Mitchell</u>, 964 F.2d 583. Although "precise equivalence in culpability" is not required, the plaintiff must prove that the acts of the similarly-situated employee were of "comparable seriousness" to her own. <u>Harrison v. Metro. Gov't of Nashville</u>, 80 F.3d 1107, 1115 (6th Cir. 1996) (quoting <u>McDonald v. Santa Fe Trail Transp. Co.</u>, 427 U.S. 273, 283 n.11 (1976)), <u>overruled on other grounds by Jackson v. Quanex Corp.</u>, 191 F.3d 647, 667 (6th Cir. 1999); <u>see also</u> <u>McDonnell-Douglas</u>, 411 U.S. at 804; <u>Weigel v. Baptist Hosp. of East Tenn.</u>, 302 F.3d 367, 379 (6th Cir. 2002).[13] A plaintiff's subjective belief that other employees' misconduct is comparably serious is insufficient. <u>Mitchell</u>, 964 F.2d at 583.

In assessing the "comparable seriousness" of another employee, courts looks to several aspects of the misconduct, including the type of misconduct, the frequency of the misconduct, the

---

[13]The "comparable seriousness" standard is used in several circuits. <u>See</u> <u>Graham v. Long Island R.R.</u>, 230 F.3d 34, 40 (2d Cir. 2000); <u>Ricks v. Riverwood Int'l Corp.</u>, 38 F.3d 1016, 1019 (8th Cir. 1994); <u>McAlester v. United Air Lines, Inc.</u>, 851 F.2d 1249, 1261 (10th Cir. 1988); <u>Corley v. Jackson Police Dep't</u>, 566 F.2d 994, 998 (5th Cir. 1978).

employee's history of misconduct, and the resulting harm. Harrison, 80 F.3d at 1115-16 (plaintiff with history of motor vehicle accidents and other misconduct similarly situated to other employees with history of motor vehicle accidents and other misconduct); Weigel, 302 F.3d at 379 (isolated unexcused absences not comparable to "systemic absenteeism"); Clayton v. Meijer, Inc., 281 F.3d 605, 612 (harm resulting from employee's conduct is "differentiating or mitigating circumstance"). "[A]n employer is justified in responding differently to different kinds of work-related infractions, such as those of greater frequency or severity." Quinn-Hunt v. Bennett Enters., Inc., No. 3:02CV7195, 2005 WL 2174053, *3 (N.D. Ohio Sept. 7, 2005) Exhibit O.

Courts also look to the circumstances surrounding the misconduct. Failure to report an accident may sufficiently distinguish a plaintiff from an employee who had an accident but reported it. Bush v. Am. Honda Motor Co., Inc., 277 F. Supp. 2d 780, 795 n.13 (S.D. Ohio 2002). By failing to report an accident, a plaintiff may have violated additional rules that employees who promptly reported accidents did not violate. See Elmenayer v. ABF Freight Sys., No. 98-CV-4061 (JG), 2001 WL 1152815, *8 (E.D.N.Y. Sept. 20, 2001) (holding that plaintiff disciplined for failure to report accident is only similarly situated to other employees failing to report accidents) Exhibit P.[14]

The appearance of dishonesty can also distinguish a plaintiff's misconduct. See Rivera v. City & County of Denver, 365 F.3d 912, 924 (10th Cir. 2004); Williams v. Penske Transp. Servs.,

---

[14]See also Cosme v. Henderson, 287 F.3d 152, 156, 161 (2d Cir. 2002) (accident and failure to report accident as separate disciplinary infractions); Sepulvada v. Baker Hughes Oilfield Operations, Inc., 2005 WL 1875092, *7 (W.D. Okla. Aug. 5, 2005) (none of the "similarly situated" employees violated three company policies at once by having an accident, failing to report it, and leaving the scene), Exhibit Q; Dickerson v. U.S. Steel Corp., 472 F.Supp. 1304, 1356 (E.D. Pa. 1978) (plaintiff violated additional rules by failing to report accident), vacated on other grounds by Worthy v. U.S. Steel Corp., 616 F.2d 698 (3d Cir. 1980), remanded to Worthy v. U.S. Steel Corp., 507 F. Supp. 25 (E.D. Pa. 1980).

<u>Inc.</u>, 46 F. Supp. 2d 1135, 1142 (D. Kan. 1999). A plaintiff who engages in misconduct and attempts to "cover up" that misconduct is not similarly situated to an employee who makes no such attempt but "promptly notifies management." <u>Summerville v. Ross/Abbott Labs.</u>, 187 F.3d 638, 1999 WL 623786, *6 (6th Cir. 1999) Exhibit R.  <u>See also</u> <u>Kinamore v. EPB Elec. Util.</u>, 92 Fed.Appx. 197, 204 (6th Cir. 2004) (plaintiff's attempt to cover up misconduct was legitimate non-discriminatory basis for disciplinary action) Exhibit S.

Only where another employee's conduct is comparable to the plaintiff's conduct can the other employee be considered similarly situated. The fact that another employee was treated differently than the plaintiff where the other employee's conduct differs from the plaintiff's conduct–where the plaintiff violated multiple rules and the other employee did not, where the plaintiff attempted to cover up her misconduct and the other employee did not, or where the plaintiff's misconduct resulted in substantial damage or other harmful consequences and the other employee's misconduct did not–does not support an inference of discrimination. The difference in treatment is likely the result of the difference in conduct, rather than the result of discrimination. Because different treatment in such situations does not support an inference of discrimination, it can not contribute to plaintiff's *prima facie* case.

### d.    Plaintiff Cannot Identify Any Employees That Satisfy the Three <u>Mitchell</u> Requirements

In order to establish the fourth <u>McDonnell-Douglas</u> element, Ms. Fouse must identify "similarly situated" employees outside the protected class who were treated differently–that is, employees who satisfy all three <u>Mitchell</u> requirements: the same supervisor, the same standards, and the same conduct. She cannot do so. Ms. Fouse identifies eight allegedly similarly situated

-15-

employees: Anthony Ratliff, Paul Scheer, Jesse Pence, Steve West, Tina Tabor, Cindy Casparro, Doti Venham-Cunningham, and Christine White. Chart, cols. 3-10, Ex. E. None of these employees satisfies even two of the three <u>Mitchell</u> requirements.

Ms. Fouse's immediate supervisors were Jeff Easley and Tracy Blackwell. EEOC Tr., Fouse Test. at 15/9-17, 22/22-23/13 Ex. F; Barker Test. at 80/14-21, Ex. F. Ms. Fouse alleges that Mr. Easley was responsible for her termination, although she is unsure who made the decision. Fouse Dep. at 51/22-53/19, Ex. B. However, her Notice of Removal was not signed by Mr. Easley or Ms. Blackwell; Kathy French signed the Notice of Removal as the "Issuing Authority" and John Barker signed as the "Concurring Authority."[15] Notice at 1, Ex. A. USPS policy requires both an issuing authority and a concurring authority for a termination–Ms. Fouse could not have been terminated by a supervisor alone. Tracy Blackwell, a new supervisor at the time, had some limited involvement in the events surrounding Ms. Fouse's termination as the supervisor on duty at the time of Ms. Fouse's accident, but had little, if any, involvement in her termination. It is assumed for the sake of argument–although not established–that Mr. Easley, Ms. Blackwell, Ms. French, and Mr. Barker all participated in the decision to terminate Ms. Fouse, such that each may be considered her supervisor under <u>Mitchell</u>. At a minimum, then, in order to satisfy the first <u>Mitchell</u> requirement, Ms. Fouse must identify other employees who dealt with at least one of these four individuals.

The employees identified by Ms. Fouse must also satisfy the same standards requirement.

---

[15]There is some dispute over Mr. Easley's involvement in Ms. Fouse's termination. <u>See</u> EEOC Tr., Barker Test. at 62/11-64/19, Ex. F; Chart, col. 2, Ex. E; Easley EEO Aff. of 12/17/00 at 1/12-15, I.R. at 14-15, Ex. E.

At the time of her termination, Ms. Fouse was classified as a transitional employee.[16] Notice at 1, Ex. A. Transitional employees, according to USPS policy, are subject to different standards than career employees–whether full-time, part-time, or part-time flexible–or casual employees. Transitional employees, like career employees, may be terminated for just cause. However, the concept of "progressive discipline"–which is required for career employees–does not apply to transitional employees. Under progressive discipline, management must issue discipline in a progressive manner, issuing "lesser" discipline for a first offense and increasingly severe discipline for subsequent offenses. This concept *does not apply* to transitional employees. When a transitional employee appeals a termination via the grievance-arbitration procedure, the only issue before the arbitrator is "whether the employee is guilty of the charge against [her]. Where the employee is found guilty, the arbitrator shall not have the authority to modify the discharge." Nat'l Agreement, Appx. B, § 11, Ex. I.  Career employees are subject to different disciplinary standards than transitional employees, and thus do not satisfy the second <u>Mitchell</u> requirement. The fact that career employees were treated differently than a transitional employee when USPS policy *requires* them to be treated differently does not support an inference of discrimination.

Casual employees are subject to yet another set of standards. Unlike transitional employees, casual employees are nonbargaining unit employees and may be terminated *at any time for any reason*. The terminology is even different–transitional employees are subject to "removal;" casual employees are subject to "termination or separation." ELM §§ 365.11, 365.33, Ex. J.  The fact that casual employees are treated differently than transitional employees does not support an inference of discrimination–according to USPS policy, casual employees are subject

---

[16]<u>See</u> <u>supra</u> note 1.

-17-

to a different standard and therefore *must* be treated differently. Transitional employees are not similarly situated to career employees or casual employees–only transitional employees satisfy the same standards requirement.

Any employees identified by Ms. Fouse, in addition to dealing with the same supervisor and being subject to the same standards, must have engaged in the same *conduct* as Ms. Fouse. Ms. Fouse attempts to compare herself with other employees who were involved in motor vehicle accidents. However, her Notice of Removal specifically states that she was terminated for *failure to report* her accident to her supervisors. Involvement in a motor vehicle accident is grounds for discipline, even when the employee promptly reports the accident. By failing to report the accident, Ms. Fouse violated *additional* USPS policies.  Furthermore, Ms. Fouse did not contact the police to report the accident, but violated USPS procedures by leaving the scene of the accident. As a result, her supervisors were unable to conduct an investigation of the accident. Her conduct led her supervisors to believe that she was attempting to "cover up" her accident. Furthermore, her accident resulted in approximately $2000 worth of damage to the USPS vehicle.

Thus, in order to satisfy the three <u>Mitchell</u> requirements, Ms. Fouse must identify (1) transitional employees (2) who dealt with Mr. Easley, Ms. French, Mr. Barker, or Ms. Blackwell. These employees must also (3) have been involved in a motor vehicle accident which they failed to report promptly, creating a suspicion that they were attempting to cover up the accident and preventing the USPS from investigating the accident. The accident must also have resulted in substantial damage. None of the employees identified by Ms. Fouse satisfies these criteria.[17]

---

[17]<u>See</u> <u>supra</u> notes 3-11 and accompanying text for factual details.

Anthony Ratliff, a white male, was a transitional employee, but dealt with a different supervisor. He was involved in a motor vehicle accident, but promptly reported it. Chart, col.3, Ex. E.

Paul Scheer, a white male, dealt with Jeff Easley, but was a casual–not a transitional–employee. He was involved in a motor vehicle accident, but promptly reported it.  Id. at col. 4.

Jesse Pence, a white male, dealt with Mr. Easley, but was a full-time regular employee, not a transitional employee. Furthermore, Mr. Pence was involved in an industrial accident, not a motor vehicle accident. Id. at 5.

Steve West, a white male, dealt with Kathy French, but was a full-time regular employee, not a transitional employee. He was involved in a motor vehicle accident, but promptly reported it. Despite the fact that he was a full-time employee and promptly reported his accident, he received a five-day suspension. Id. at col. 6.

Tina Tabor, a white female, dealt with Mr. Easley, but was a part-time flexible employee, not a transitional employee. She was involved in a motor vehicle accident, which she failed to report. However, there was no damage to the truck as a result of her accident. Her supervisors did not find out about the accident until sometime later. She was not disciplined. Id. at col.7.

Cindy Casparro, a white female, dealt with Ms. Blackwell and Ms. French, but was a full-time regular employee, not a transitional employee. She was involved in a motor vehicle accident which she failed to report. The USPS vehicle was not damaged. Ms. Casparro received a fourteen-day suspension. Id. at col. 8.

Doti Venham-Cunningham, a white female, dealt with a different supervisor. She was a full-time regular employee, not a transitional employee. She was not involved in a motor vehicle

accident, but received a letter of warning for parking obstructing a stop sign. Id. at col. 9.

Christine White, a white female, dealt with Ms. French, but was a part-time flexible employee, not a transitional employee. She was involved in a motor vehicle accident, which she promptly reported. Despite her status as a part-time flexible employee and her prompt reporting of the accident, Ms. White was terminated. Id. at col. 10.

None of the employees identified by Ms. Fouse satisfy all three Mitchell criteria. Each employee either dealt with a different supervisor, was subject to different standards, or engaged in different conduct–in fact, none of these employees can satisfy even two of the three Mitchell requirements. Ms. Fouse is unable to identify any similarly-situated employees outside the protected class who were treated differently. She cannot establish the fourth McDonnell-Douglas element, and, as such, has failed to establish a prima facie case of discrimination.

### 2. Plaintiff Has Failed to Establish Facts Sufficient to Support an Inference of Discrimination.

Ms. Fouse has not articulated facts sufficient to support an inference of discrimination. In order to survive a motion for summary judgment, a plaintiff must either have direct evidence of discrimination or indirect evidence sufficient to support "an inference of discrimination." In outlining the four McDonnell-Douglas elements, the Court was outlining elements that *are usually present–even required–to support an inference of discrimination*. A plaintiff must have sufficient evidence to support an inference of discrimination, and in order to do so, a plaintiff must normally establish all four McDonnell-Douglas elements. The purpose of the *prima facie* case outlined in McDonnell-Douglas is to support an inference of discrimination. It is this inference of discrimination that gives rise to the rebuttable presumption that an employer

unlawfully discriminated against a plaintiff. The four <u>McDonnell-Douglas</u> elements are a means to an end, and that end is an inference of discrimination.

The facts articulated by Ms. Fouse do not support such an inference. Not only does she fail to establish the four <u>McDonnell-Douglas</u> elements, but additional facts cut against any inference of discrimination that she attempts to create.

Several courts have held that where the majority of a plaintiff's disciplinarians belong to the plaintiff's protected class, an inference of discrimination becomes more difficult. <u>Toliver v. Comm'y Action Comm'n to Help the Econ</u>, 613 F. Supp. 1070, (S.D.N.Y. 1985), <u>aff'd</u> 800 F.2d 1128 (2d Cir.), <u>cert. denied</u>, 479 U.S. 863 (1986). Since the Second Circuit's affirmation of <u>Toliver</u>, this principle has been applied in District Courts across the Second Circuit,[18] and has gained support in other circuits as well. <u>See</u> <u>Elrod v. Sears, Roebuck, & Co.</u>, 939 F.2d 1466, 1471 (11th Cir. 1991); <u>Kendrick v. Penske Transp. Servs.</u>, 1999 WL 450886 (D. Kan. 1999) Exhibit T.  This is not to say, of course, that "as a matter of law . . . human beings of one definable group will not discriminate against other members of their group." <u>Castenada v. Partida</u>, 430 U.S. 482, 499 (1977). The Sixth Circuit has explicitly rejected such a presumption, holding that "[t]he mere presence of one black person in the decision-making process" does not guarantee that discrimination has not taken place. <u>Lewis v. Sears, Roebuck, & Co.</u>, 845 F.2d 624, (6th Cir. 1988). Nor should it. It is certainly possible that one member of a protected class could

_____

[18]<u>See</u> <u>Darboe v. Staples, Inc.</u>, 243 F. Supp. 2d 5 (S.D.N.Y. 2003); <u>Pesok v. Hebrew Union Coll.-Jewish Inst. of Religion</u>, 235 F. Supp. 2d 281 (S.D.N.Y. 2002) (inference of discrimination more difficult where decision-makers belong to plaintiff's protected class); <u>O'Hara v. Mem'l Sloan Kettering Cancer Ctr.</u>, 2000 WL 1459798 (S.D.N.Y. 2000) Exhibit U; <u>Booze v. Shawmut Bank, Conn.</u>, 62 F. Supp. 2d 593 (D. Conn. 1999); <u>Anderson v. Anheuser-Busch</u>, 65 F. Supp. 2d 218, (S.D.N.Y. 1999) ("That [decision-maker] was a member of [plaintiff's] protected class . . . further weakens the inference of discrimination.");

discriminate against another and so violate civil rights law.

In <u>Lewis</u>, however, the court was merely explaining that a presence in the decision-making process of a member of plaintiff's protected class does not provide blanket protection from an allegation of discrimination. The Sixth Circuit has never held that the involvement of members of plaintiff's protected class in the decision-making process was irrelevant.

Ms. Fouse alleges that her employers discriminated against her on the basis of her race. However, the Notice of Removal terminating Ms. Fouse was signed by John Barker, an African American male, and Kathy French, an African American female. Tracy Blackwell, the supervisor on duty when Ms. Fouse had her accident, is also an African American female. The only individual arguably involved in the decision to terminate Ms. Fouse who is *not* in her protected class is John Easley, a white male. However, Mr. Easley did not sign the Notice of Removal. Ms. Fouse is thus in the difficult position of establishing that she suffered discrimination on account of her race when both the individuals who signed her Notice of Removal are members of her protected class–as are three of the four supervisors who were involved in any way in her termination.

The fact that the majority of the decision-makers belong to the same protected class as the plaintiff weakens the inference of discrimination. Here, Ms. Fouse has failed to establish a *prima facie* case and so cannot create an inference of discrimination to begin with. Any inference of discrimination raised by the facts she alleges is further weakened by the fact that the termination decision was made by members of her own protected class.

**B.  Defendant Has Articulated a Legitimate, Non-Discriminatory Reason for Terminating Plaintiff.**

Ms. Fouse has not established a *prima facie* case–or facts sufficient to support an inference of discrimination. She has failed to create a presumption that the USPS unlawfully

discriminated against her and is unable to shift the burden to the USPS to articulate a legitimate, non-discriminatory reason for her termination. Even if Ms. Fouse were able to establish a *prima facie* case, her claim would fail because the USPS has successfully carried its burden: the USPS has articulated several legitimate, non-discriminatory reasons for terminating Ms. Fouse: (1) she violated USPS driving policy, resulting in an accident; (2) she failed to promptly report her accident; (3) because of her failure to report her accident, her supervisors believed she was attempting to "cover up" the accident; and (4) the accident resulted in $2000 worth of damage to the USPS vehicle. Any of these reasons would be a sufficient legitimate, non-discriminatory reason for termination; combined, they are compelling.

Ms. Fouse may challenge the factual basis of these reasons, claiming that she did promptly report the accident, that she did not have a "accident," or that she was not attempting to cover up her misconduct. However, the actual facts are irrelevant. The only relevant fact is *what her supervisors believed*. See Kinamore, 92 Fed. Appx. at 204, Ex. S.  Mr. Easley, Ms. Blackwell, Ms. French, and Mr. Barker believed that Ms. Fouse did fail to report her accident. Easley EEO Aff. at 1/9-10, I.R. at 14, Ex. E; EEOC Tr., Blackwell Test. at 105/9-20, Ex. F; Id., French Test. at 96/7-97/4; Id., Barker Test. at 72/3-5.  In their eyes, mentioning that she had a "mishap" with her truck did not constitute "reporting the accident." EEOC Tr., Barker Test. at 84/ 4-8, Id.; Id., Blackwell Test. at 107/3-21. Likewise, this failure to report was the basis for Ms. Fouse's supervisors' belief that she was attempting to "cover up" her misconduct. Regardless of the truth of these beliefs, if the termination was based on these beliefs, then it was not based on discrimination.

Ms. Fouse alleges that she was terminated in an attempt "to hide that fact that [Ms. Blackwell] didn't do her job." Fouse Dep. at 54/5-20, Ex. B.  In other words, she was terminated

because Ms. Blackwell and Mr. Easley wanted to cover up the fact that, contrary to USPS policy, Ms. Blackwell had sent Ms. Fouse out to finish her route after the accident. Id.. There is no evidence that this "cover up" was the motivation for Ms. Fouse's termination. EEOC Tr., Blackwell Test. at 120/2-15, Ex. F.  Ms. Blackwell freely admitted that she erred in sending Ms. Fouse back out to complete her route. Id. at 113/2-5, 119/15-17. However, even assuming that Ms. Fouse's termination was part of an attempt to "cover up" Ms. Blackwell's mistake, then the termination was not motivated by discrimination, and Ms. Fouse's claim must fail. A "cover up" is certainly not an admirable reason for termination, but it is a legitimate, non-discriminatory reason. There is no evidence that the USPS would have been any less desirous of "covering up" the mistake if the accident had not involved an African American employee. The USPS has offered several legitimate, non-discriminatory reasons for its decision to terminate Ms. Fouse, and thus has more than carried its burden under McDonnell-Douglas.

C.      **Plaintiff Cannot Show That Non-Discriminatory Reason is Pretextual.**

Once the defendant has articulated a legitimate, non-discriminatory reason for terminating the plaintiff, the burden shifts back to the plaintiff to show that the proffered reason is pretextual.

In order to carry this burden, the plaintiff must "produce sufficient evidence from which the jury may reasonably reject the employer's explanation." Manzer v. Diamond Shamrock Chemicals Co., 29 F.3d 1078, 1083 (6th Cir. 1994). The Sixth Circuit has articulated three methods by which a plaintiff may establish pretext: by showing that (1) "the proffered reasons had no basis in fact;" (2) "the proffered reasons did not actually motivate [her] discharge;" or (3) the proffered reasons were "insufficient to motivate discharge." Id. at 1084 (citations omitted).

Ms. Fouse has absolutely no evidence that the reasons offered by the USPS are pretextual. Ms. Fouse does not appear to challenge the factual basis of her termination–she did,

in fact, have an accident, and did, in fact, leave the scene. She did not tell her supervisors that she had an accident. Ms. Fouse has no evidence that the proffered reasons were not the motivation for her termination, or that the proffered reasons were insufficient to motivate her termination. As such, she is unable to carry her burden under McDonnell-Douglas.

> **D.** **Plaintiff Faces the Additional Burden of Proving that Members of Her Own Protected Class Discriminated Against Her.**

Ms. Fouse claims that she was discriminated against by members of her own protected class. The involvement of members of her own protected class in the decision-making process weakens Ms. Fouse's claim of racial discrimination. See supra Section IV.A.2. This is not an insurmountable obstacle–it is certainly possible for members of a protected class to discriminate against other members of that class. The fact that the majority of the decision-makers belong to the same protected class as the plaintiff does, however, make an inference of discrimination more tenuous. Where, as here, the plaintiff has failed to establish a *prima facie* case *and* the defendant has articulated several legitimate reasons for termination, the involvement of members of plaintiff's protected class in the decision-making process further weakens the plaintiff's already tenuous case.

## V.     CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Motion for Summary Judgment be granted and that Plaintiff's complaint be dismissed with prejudice in its entirety.

Respectfully submitted,

GREGORY G. LOCKHART
United States Attorney


s/Christopher R. Yates
CHRISTOPHER R. YATES (0064776)
Assistant United States Attorney
Attorney for Defendant
303 Marconi Boulevard
Suite 200
Columbus, Ohio 43215
(614) 469-5715
Fax: (614) 469-5653
Christopher.Yates @usdoj.gov

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on October 31st, 2005, I electronically filed the foregoing with the Clerk

of the Court using the CM/ECF system which will send notification of such filing to counsel for

Plaintiff, Nicholas E. Kennedy, Esq.

s/Christopher R. Yates
_____
CHRISTOPHER R. YATES (0064776)
Assistant United States Attorney

## LIST OF EXHIBITS

Exhibit A        Notice of Removal

Exhibit B        Fouse Deposition

Exhibit C        Fouse Arbitration Award

Exhibit D        EEOC Decision

Exhibit E        Investigative Record

Exhibit F        EEOC Hearing Transcript

Exhibit G        Barker EEO Affidavit

Exhibit H        Employee's Guide to Safety

Exhibit I        1998 NALC-USPS Nat'l Agreement

Exhibit J        Employee & Labor Relations Manual

Exhibit K        Macklin v. Turner, No. 1:03CV2347, 2005 WL 2211170 (N.D. Ohio Sept. 9, 2005)

Exhibit L        Schatzman v. Co. of Clermont, 234 F.3d 1269, 2000 WL 1562819 (6th Cir. 2000)

Exhibit M        Russell v. Drabik, 24 Fed. Appx. 408 (6th Cir. 2001)

Exhibit N        Burgess v. State of Washington Dep't of Corrections, 199 F.3d 1331, 1999 WL 974182 (9th Cir. 1999)

Exhibit O        Quinn-Hunt v. Bennett Enters., Inc., No. 3:02CV7195, 2005 WL 2174053 (N.D. Ohio Sept. 7, 2005)

Exhibit P        Elmenayer v. ABF Freight Sys., No. 98-CV-4061 (JG), 2001 WL 1152815 (E.D.N.Y. Sept. 20, 2001)

Exhibit Q        Sepulvada v. Baker Hughes Oilfield Operations, Inc., 2005 WL 1875092 (W.D. Okla. Aug. 5, 2005)

Exhibit R        Summerville v. Ross/Abbott Labs., 187 F.3d 638, 1999 WL 623786 (6th Cir. 1999)

Exhibit S        Kinamore v. EPB Elec. Util., 92 Fed. Appx. 197 (6th Cir. 2004)

Exhibit T        Kendrick v. Penske Transp. Servs., 1999 WL 450886 (D. Kan. 1999)

Exhibit U        O'Hara v. Mem'l Sloan Kettering Cancer Ctr., 2000 WL 1459798 (S.D.N.Y. 2000)