**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**Kathy Fouse,**

    **Plaintiff,**

**-V-**

                                            **Case No. C-2-04-556**
                                            **JUDGE SMITH**
                                            **Magistrate Judge King**

**John E. Potter, Postmaster General,**

    **Defendant.**

**OPINION AND ORDER**

    Plaintiff, Kathy Fouse, asserts that her employment with the United States Postal Service was terminated as a result of race discrimination. This matter is before the Court on Defendant John E. Potter, Postmaster General's Motion for Summary Judgment. Based on the following, Defendant's Motion for Summary Judgment is granted.

**I.  FACTS**

    Plaintiff, Kathy Fouse, is an African-American female who was employed as a transitional employee city carrier with the United States Postal Service ("USPS"), West Worthington branch, in Columbus, Ohio. On June 24, 2000, Plaintiff was on her delivery route and she was involved in a motor vehicle accident in which the USPS vehicle she was driving struck a telephone pole. Plaintiff called the West Worthington branch and asked to speak to Mr. Jeff Easley, supervisor of customer service. Ms. Tracy Blackwell, the supervisor on duty at the time of the accident, answered Plaintiff's call and informed her that Mr. Easley was not available. Plaintiff then informed Ms. Blackwell that she had "had a mishap" with her truck and was unable to shut the door. (Fouse

Testimony from 7/17/02 EEOC hearing at 15/15-17; Blackwell Testimony from 7/17/02 EEOC hearing at 107/6-8). At this time, Ms. Blackwell stated that she did not think that Plaintiff had been involved in an accident, but that she just could not get the door to her vehicle shut. (Blackwell testimony at 107/8-11). Ms. Blackwell and Plaintiff then agreed that Plaintiff should return back to the branch.

Upon arrival at the branch, Ms. Blackwell saw the damage to the vehicle and said that she realized at that time Plaintiff had been in an accident. (Blackwell testimony 107/22 - 108/11). Ms. Blackwell then sent Plaintiff out in another vehicle to complete her delivery route. Plaintiff claims that she then returned from her route to find Mr. Easley waiting to speak with her. Mr. Easley instructed Plaintiff to write a statement as to what happened, to clock out, and to not return to work until she heard from him.

Two days later, Mr. Easley called Plaintiff and instructed her to return to work on June 27, 2000. Plaintiff returned to work as instructed and she was given mail-casing duties in lieu of the previous mail carrying responsibilities. She continued to perform those duties for the next several weeks. On July 14, 2000, Plaintiff received a Notice of Removal, effective August 11, 2000, for failure to report the accident in violation of USPS policy. According to USPS policy, Plaintiff was supposed to report the accident and remain at the scene so her supervisor could come conduct an investigation. As a result of Plaintiff's failure to properly report the accident and remain at the scene, her supervisors were unable to conduct an investigation of the accident that resulted in over $2000 worth of damage to the USPS vehicle. Plaintiff's conduct led her supervisors to believe that she was attempting to "cover up" her accident. (*See* Barker EEO Aff. at 1/9-11, Ex. G).

On August 1, 2000, as a result of Plaintiff's removal, she filed a grievance under the National

Agreement between the USPS and the National Association of Letter Carriers ("NALC"). The grievance was processed through the proper procedures and the USPS prevailed. On March 23, 2001, the NALC appealed the decision and requested arbitration. An arbitration hearing was conducted on May 3, 2001, at which time both parties "had a full and fair opportunity to present evidence and testimony, to examine and cross-examine witnesses, and to argue their respective positions." On June 2, 2001, the arbitrator found that there was just cause for Ms. Fouse's termination and ruled in favor of the USPS.

In addition to this grievance procedure, Plaintiff participated in counseling with the EEOC from July 19, 2000 through October 12, 2000. See Fouse v. Potter, EEOC Case No. 220-A1-5255 (Sept. 20, 2002). On October 25, 2000, Plaintiff filed a formal complaint with the EEOC, alleging discrimination on the basis of race and gender. The Complaint was investigated in April 2001 and Plaintiff requested a hearing on May 13, 2001. An EEOC hearing was conducted on July 17, 2002. The Administrative Judge issued an opinion on September 20, 2002 holding that Plaintiff "was not discriminated against based on her race and/or sex." EEOC Decision at 8. Plaintiff appealed the decision and the EEOC affirmed the Administrative Judge's decision on March 28, 2004. At that time, the EEOC gave Plaintiff the right to file a civil action. Plaintiff then initiated this action against the USPS on June 28, 2004, and then filed the First Amended Complaint on July 6, 2004.

## II. SUMMARY JUDGMENT STANDARD

The standard governing summary judgment is set forth in Fed. R. Civ. P. 56(c), which provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file,

>together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment will not lie if the dispute about a material fact is genuine; "that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Summary judgment is appropriate, however, if the opposing party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); see also Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 588 (1986).

When reviewing a summary judgment motion, the Court must draw all reasonable inferences in favor of the nonmoving party, and must refrain from making credibility determinations or weighing the evidence. Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 150-51 (2000).[1]  The Court disregards all evidence favorable to the moving party that the jury would not be not required to believe. Id. Stated otherwise, the Court must credit evidence favoring the nonmoving party as well as evidence favorable to the moving party that is uncontroverted or unimpeached, if it comes from disinterested witnesses. Id.

The Sixth Circuit Court of Appeals has recognized that Liberty Lobby, Celotex, and

---

[1] Reeves involved a motion for judgment as a matter of law made during the course of a trial under Fed. R. Civ. P. 50 rather than a pretrial summary judgment under Fed. R. Civ. P. 56. Nonetheless, standards applied to both kinds of motions are substantially the same. One notable difference, however, is that in ruling on a motion for judgment as a matter of law, the Court, having already heard the evidence admitted in the trial, views the entire record, Reeves, 530 U.S. at 150. In contrast, in ruling on a summary judgment motion, the Court will not have heard all of the evidence, and accordingly the non-moving party has the duty to point out those portions of the paper record upon which it relies in asserting a genuine issue of material fact, and the court need not comb the paper record for the benefit of the nonmoving party. In re Morris, 260 F.3d 654, 665 (6th Cir. 2001). As such, Reeves did not announce a new standard of review for summary judgment motions.

Matsushita have effected "a decided change in summary judgment practice," ushering in a "new era" in summary judgments. Street v. J.C. Bradford & Co., 886 F.2d 1472, 1476 (6th Cir. 1989). The court in Street identified a number of important principles applicable in new era summary judgment practice. For example, complex cases and cases involving state of mind issues are not necessarily inappropriate for summary judgment. Id. at 1479.

Additionally, in responding to a summary judgment motion, the nonmoving party "cannot rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact, but must 'present affirmative evidence in order to defeat a properly supported motion for summary judgment.'" Id. (*quoting* Liberty Lobby, 477 U.S. at 257). The nonmoving party must adduce more than a scintilla of evidence to overcome the summary judgment motion. Id. It is not sufficient for the nonmoving party to merely "'show that there is some metaphysical doubt as to the material facts.'" Id. (*quoting* Matsushita, 475 U.S. at 586).

Moreover, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." Id. at 1479-80. That is, the nonmoving party has an affirmative duty to direct the court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact. In re Morris, 260 F.3d 654, 665 (6th Cir. 2001).

### III. DISCUSSION

Plaintiff asserts that her termination from the USPS was the result of racial discrimination in violation of Title VII. Defendant argues that Plaintiff was not terminated in violation of Title VII, but because Plaintiff violated USPS policy by failing to report the accident or remain at the scene of the accident so her supervisor could conduct an investigation.

### A. Prima Facie Case of Race Discrimination

Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000e-2(A)(1). In a race discrimination action, the plaintiff may prove discrimination by direct evidence or by establishing a prima facia case. The elements of a prima facia case of employment discrimination based on race are: (1) that the plaintiff is a member of a protected class; (2) that the plaintiff was qualified for the position; (3) that the defendant subjected the plaintiff to an adverse employment action; and, (4) that the defendant did not subject similarly situated persons outside the protected class to such adverse action. See St. Mary's Honor Center v. Hicks, 509 U.S. 502, 506 (1993); McDonnell Douglas Corp. v. Green, 411 U.S. 792, 802 (1973). If the plaintiff establishes a prima facie case, then the burden shifts to the defendant to come forward with a legitimate, non-discriminatory reason for the adverse action against the plaintiff. See Id.; Texas Dept. of Comm. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981). If the defendant comes forward with a legitimate, non-discriminatory reason for its actions, then the burden shifts to the plaintiff to prove that the defendant's proffered reason is a mere pretext for discrimination. See Id.; Burdine, 450 U.S. 248, 253. "The nature of the burden that shifts to the defendant should be understood in light of the plaintiff's ultimate and intermediate burdens. The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." Burdine, 450 U.S.248, 253.

Plaintiff asserts that she can establish a prima facie case of race discrimination. Plaintiff

argues and Defendant does not dispute that Plaintiff satisfies the first three elements of her race discrimination claim.  Plaintiff is African-American and therefore a member of a protected class. Plaintiff suffered an adverse employment action when she was terminated.  Plaintiff was hired as a mail carrier for the USPS and therefore was qualified for the position.  Defendant, however, argues that Plaintiff is unable to establish the fourth element, that similarly-situated employees outside the protected class were treated differently.

Plaintiff argues that Tina Tabor, a white female who was employed by Defendant as a part-time flexible or "PTF" employee, is similarly situated and was not terminated after she failed to report an accident.  Ms. Tabor, like Plaintiff, worked at the West Worthington branch and was supervised by the same people, Blackwell, Easley, and French.  Ms. Tabor was a mail carrier and during her route, she was involved in an accident in which she drove her mail truck into a garbage can owned by a postal customer.  Ms. Tabor did not report the accident to any of her supervisors, however, a few weeks later, the customer contacted Defendant to report the accident.  Ms. Tabor was instructed to buy the customer a new trash can.  (Ex. 3 to Pl.'s Memo. in Opp. to Def.'s Mot. for Summ. J., Ms. Tabor's Employee Accident History).  There was, however, no damage to the USPS vehicle, unlike Plaintiff's accident, which resulted in over $2000 worth of damage.

Defendant argues, on the other hand, that Plaintiff and Ms. Tabor are not similarly situated. In order to determine whether another employee is similarly situated to Plaintiff, that other employee "must have dealt with the same supervisor, ... been subject to the same standards, and engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."  Mitchell v. Toledo Hospital, 964 F.2d 577, 583 (6th Cir. 1992).

There is no dispute between the parties that Plaintiff and Ms. Tabor had the same supervisors and that they engaged in the same conduct, however, there is a dispute as to whether the two were subject to the same standards.

Defendant argues that employees who are subject to different disciplinary standards are treated differently, but this does not create an inference of discrimination. Plaintiff, however, argues that difference in job activities between the two employees "do not automatically constitute a meaningful distinction that explains the employer's differential treatment of the two employees." Ercegovich v. Goodyear Tire & Rubber Co., 154 F.3d 344, 353 (6th Cir. 1998). Plaintiff further asserts that "similarly-situated" for purposes of alleged disciplinary discharges, relates to whether the employees were bound by the same duties, obligations and policies for which the discharge allegedly occurred. Singfield v. Akron Metropolitan Housing Authority, 389 F.3d 555, 562 (6th Cir. 2004).

In this case, Plaintiff was a transitional employee and therefore was only subject to the same standards as other transitional employees. Defendant argues that Ms. Tabor was subject to different standards than Plaintiff because she was a part-time flexible employee, not a transitional employee. While Ms. Tabor may have been part-time, she was still a career employee and therefore she could not be terminated without progressive discipline, meaning management must issue lesser discipline for a first offense and a pattern of increasingly severe discipline for succeeding offenses. This concept, however, did not apply to transitional employees and therefore Plaintiff could be terminated for just cause for a first offense. Plaintiff has therefore failed to establish the final element of a prima facie case of race discrimination, that similarly-situated employees outside the protected class were treated differently. Plaintiff has therefore failed to state a claim of race discrimination.

Even if the Court were to find that Plaintiff had established a prima facie case of discrimination, Defendant has articulated a non-discriminatory reason for Plaintiff's termination that is not related to race. Defendant has cited several legitimate, non-discriminatory reasons for terminating Plaintiff, including: Plaintiff violated USPS driving policy, resulting in an accident; Plaintiff failed to promptly report her accident; because of Plaintiff's failure to report her accident, her supervisors believed she was attempting to "cover up" the accident; and the accident resulted in $2000 worth of damage to the USPS vehicle.

Plaintiff attempts to argue that Defendant's cited reasons are pretextual, lacking both truth and fairness. Plaintiff argues that she did report the accident. Plaintiff did call in, but merely stated that she had a mishap with the truck, which her supervisors did not believe constituted reporting the accident. The Sixth Circuit has adopted an "honest belief" rule with regard to an employer's proffered reason for discharging an employee. Smith v. Chrysler Corp., 155 F.3d 799, 806-807 (6th Cir. 1998). Under this rule, as long as an employer has an honest belief in its proffered nondiscriminatory reason for discharging an employee, the employee cannot establish that the reason was pretextual simply because it is ultimately shown to be incorrect. Id. at 806. An employer has an honest belief in its reason for discharging an employee where the employer reasonably relied "on the particularized facts that were before it at the time the decision was made." Id. at 807.

Plaintiff's supervisors, Mr. Easley, Ms. Blackwell, Ms. French, and Mr. Barker all believed that Plaintiff failed to report her accident. In light of Plaintiff's conduct, her supervisors believed that Plaintiff was attempting to cover-up her misconduct. Therefore, based on the testimony of Plaintiff's supervisors, they had an "honest belief" in its reason for terminating Plaintiff's employment and therefore the termination was not based on discrimination. Therefore, even if

9

Plaintiff can prove a prima facie case of race discrimination, Plaintiff cannot prove that Defendant's reasons for terminating her, for violating USPS policy, is pretextual. Defendant is therefore entitled to summary judgment on Plaintiff's claims of racial discrimination.

## V.  CONCLUSION

Based on the above, the Court **GRANTS** Defendant's Motion for Summary Judgment (Doc. 18). Plaintiff's Federal Title VII claim of race discrimination is hereby dismissed with prejudice.

The Clerk shall remove this case from the Court's pending cases list.

The Clerk shall remove Document 18 from the Court's pending motions list.

**IT IS SO ORDERED.**

                                           **s/ George C. Smith**
                                           **GEORGE C. SMITH, JUDGE**
                                           **UNITED STATES DISTRICT COURT**